# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2024

Lyle W. Cayce
Clerk

No. 23-30146

---

Howard Gary Brown,

*Plaintiff—Appellant,*

*versus*

City of Central, *a political division of the State of Louisiana*; Davis and Son's Fender Fixer, L.L.C.; Joey Doe, *Individually and in his official capacity as tow truck driver for Davis and Son's Fender Fixer*; Roger Lynn Corcoran, *Individually and in his official capacity as City of Central's Chief of Police*; Noah McKneeley, *Individually and in his official capacity as deputy of City of Central's Police Department*; Darren Sibley, *Individually and in his official capacity as Central's Deputy Police Chief*; John H. Porche, *Individually and in his official capacity as Deputy of Central's Police Department*; Alex Doe, *Individually*; John Doe #1, *Individually*; John Doe #2, *Individually*; John Doe #3, *Individually*,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CV-264

---

No. 23-30146

Before Higginbotham, Smith, and Higginson, *Circuit Judges*.
Per Curiam:[*]

After Appellant Howard Brown was pulled over and had his motorcycle impounded for driving without license plates, he brought suit against the officers on the scene, the City of Central, Texas, the tow truck company responsible for towing his vehicle, and its employee. Defendants' motions to dismiss were referred to a magistrate judge who recommended dismissing all claims as barred by the Louisiana's one-year prescriptive period. The district court adopted the recommendation. Brown timely appealed.

We agree that Brown's claims are time-barred and AFFIRM.

# I.

On August 6, 2020, Howard Brown was driving a motorcycle on Louisiana Highway 37 when he was pulled over for driving without a license plate.[1] When Deputy John Porche asked Brown for his license and registration, Brown refused, stating he "wasn't exercising the privilege of driving in commerce under a license."[2] Porche called for backup and several officers responded, including City of Central Police Chief Roger Corcoran, Deputy Chief of Police Darren Sibley, Deputy Noah McKneely, State Trooper Alex Doe, and three unidentified officers. Ultimately, the officers

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Brown admits that his license plate reading "NOT4HIRE" was not affixed to the motorcycle.

[2] Instead, Brown provided the officer with a "notarized document as identification which contained therein a strongly worded warning to officials not to presume or assume anything about [him]."

No. 23-30146

towed and impounded Brown's motorcycle.[3] Brown claims that his vehicle has not been returned to him.

## A.

On April 21, 2022, Brown filed suit *pro se* in the Middle District of Louisiana against: (1) the City of Central; (2) Chief of Police Roger Corcoran, in his individual and official capacity; (3) Deputy Police Chief Darren Sibley, in his individual and official capacity; (4) Deputy Noah McKneely, in his individual and official capacity; (5) Deputy John Porche, in his individual and official capacity; (6) State Trooper Alex Doe, individually; (7) John Does #1–3; (8) Davis and Son's Fender Fixer, the company used to tow Brown's motorcycle; and (9) Joey Doe, "as an individual, and in his official capacity as tow truck driver for" Davis and Son's Fender Fixer. Brown asserted federal causes of action under 42 U.S.C. § 1983 and 18 U.S.C. § § 241–242, as well as state law claims of common law conspiracy, trespass, intentional infliction of emotional distress, and conversion.[4]

In his complaint, Brown suggests the City of Central's ticketing policy is unlawful because it improperly converts drivers into "inhabitant[s] of the municipal corporation known as and operating as the CITY OF CENTRAL." Pursuant to this scheme, Brown asserts the officers "used coercion and the threat of deadly force to fraudulently convert Plaintiff into an inhabitant of the CITY OF CENTRAL municipality; thereby subjecting Plaintiff to different punishments, pains, or penalties, than [sic] are

---

[3] Brown also claims that the officers asked him to sign three citations that were issued to an "Alexander Ryan Gourney," the motorcycle's registered owner.

[4] Brown also alleged that the officers violated numerous provisions of Louisiana law and asked the court to "convene a federal grand jury to investigate" these violations. Because the lower court did not understand Brown to raise these as distinct causes of action and Brown does not raise them on appeal, the Court will not consider these allegations.

prescribed for the punishment of citizens." He also accuses the officers of conspiring to and engaging in "concerted, unlawful, and malicious conduct" intended to deny Brown "his inviolable right to personal autonomy [and] right to property"[5] and argues that his motorcycle's impoundment constitutes conversion and trespass under Louisiana law.

## B.

Once filed, the case developed a voluminous paper trail. Relevant here, the City of Central first appeared by filing its answer on June 8, 2022. On August 1, 2022, Corcoran and Porche appeared in their official capacities and filed a joint motion to dismiss the claims against them, claiming qualified immunity and arguing that Brown's suit was barred by Louisiana's one-year prescriptive period. The City, McKneely, and Sibley subsequently filed motions to dismiss on the same grounds, with McKneely and Sibley filing in their official capacities.[6]

---

[5] Brown also characterized the officers' conduct as that of "an armed street gang" who "assault[ed]" him," "seiz[ed] his only mode of transportation, seiz[ed] his liberty, seiz[ed] his papers, and [left] him stranded on the side of the road tens (10s) [sic] of miles from his origin or destination." In later filings before the district court, Brown described the officers as "masked bandits [that] did go in disguise on the side of the highway, armed with deadly weapons, to seize the liberty and property of plaintiff absent due process or a warrant merely at the whim of tyrannical Chief of Police, Roger Lynn Corcoran, who declared himself judge and jury in that moment."

[6] After Corcoran, Porche, McKneely, and Sibley filed their motions to dismiss in their official capacities, Brown sought a default judgment against the officers on the basis that they failed to appear in their individual capacities. Brown then moved to "Correct Clerk's Error on Default Judgment," and the officers filed a motion to dismiss in their individual capacities. The magistrate judge recommended the district court deny Brown's motion to "Correct Clerk's Error on Default Judgment" in part because the individual-capacity motions to dismiss mooted the motion. The district court accepted this recommendation. However, after Brown served Davis and Sons but the company did not appear, the Clerk entered default against the company. Brown failed to serve Alex Doe, John Does #1–3, and Joey Doe.

No. 23-30146

The case quickly erupted in a flurry of motions. Brown moved to strike the officers' official-capacity motions to dismiss. He further requested the district court judicially estop these defendants from making any statements in "stark contradiction to" the City's answer and maintained that the one-year prescriptive period did not apply because he "didn't have a complete cause of action," "didn't have the knowledge to be able to file suit and obtain relief," and the City's law enforcement policies constituted fraud which tolled prescription. Brown filed several additional motions, including: (1) a motion for "Order to Show Cause for Materially False Statements Made by Defense Counsel"; (2) a motion "to Strike New Affirmative Defense by Estoppel"; (3) a motion for summary judgment; and (4) a motion for writ of fieri facias. Defendants opposed Brown's various motions and moved to stay discovery pending resolution of the motions to dismiss. In response, Brown moved to compel discovery. All motions were referred to the magistrate judge.

## C.

The more pressing issues were the three sets of motions to dismiss—the City of Central's motion to dismiss, the officers' official-capacity motions to dismiss, and the officers' individual-capacity motion to dismiss—as well as Brown's responses to and motions to strike the various defenses contained therein. In essence, Defendants contended Brown's suit was barred by prescription, and Brown argued this defense was not timely raised. Alternatively, Brown contended the prescriptive period tolled either while he "spent countless hours, days, and even weeks learning how to assert his rights" or until he learned of the City's fraudulent "Municipality Scheme" by which the City issued tickets to drivers who were not "inhabitants" of the parish.

No. 23-30146

The magistrate judge recommended the district court grant Defendants' motions to dismiss because all of Brown's claims were barred by prescription.[7] First, the magistrate judge found the City raised its prescription defense in "sufficient time for consideration," and that Brown had adequate time to respond to the defense so that there was no risk of unfair surprise.[8] Second, the magistrate judge concluded all of Brown's federal and state law claims were subject to Louisiana's one-year liberative prescriptive period.[9] Because Brown filed the present suit on April 21, 2022, more than one year after the incident occurred on August 6, 2020, the magistrate judge concluded that his suit was time-barred. Third, the magistrate judge rejected Brown's arguments that prescription had paused at any point. Finally, because Brown's suit was time-barred, the magistrate judge recommended dismissing all claims against all defendants who were not yet served or had not yet appeared, including the unidentified police officers, Davis and Sons, and Joey Doe.[10]

---

[7] The magistrate judge also noted that Brown's state civil conspiracy claim and his federal claims under 18 U.S.C. §§ 241–242 were not cognizable under either Louisiana nor federal law.

[8] Because the City filed its motion after its answer, the magistrate judge considered it as a motion for judgment on the pleadings. The magistrate judge similarly denied Brown's claim that the officers' individual-capacity motions to dismiss were untimely. Brown does not meaningfully contest this issue on appeal.

[9] La. Civ. Code Ann. art. 3492. In addition to being time-barred, the magistrate judge also noted that Brown's claim of conspiracy was "not an actionable claim under Louisiana law," and his claims under 18 U.S.C. §§ 241 and 242 also failed because "[b]oth Sections 241 and 242 are criminal statutes which do not provide a private right of action."

[10] Because "the pleadings establish that Plaintiff's claims are prescribed," the magistrate judge recommended the district court grant the "motion to dismiss with respect to any non-moving defendants sua sponte after giving Plaintiff notice and a reasonable time to respond." The magistrate judge determined that the objection period to its report and recommendations satisfied the notice requirement and recommended that the district court "dismiss all of the claims against the non-moving defendants based upon the grounds

No. 23-30146

Brown filed his objections to the report and recommendation on January 24, 2023, reiterating his arguments that Defendants' prescription defense was untimely. For the first time, Brown also argued the limitations period paused throughout the COVID-19 pandemic and that his 2020 filings in a separate suit he filed caused the limitations period to begin anew.

The district judge accepted the magistrate judge's recommendation and dismissed with prejudice Brown's claims against the City of Central, as well as all claims against Corcoran, Sibley, Porche, and McKneely in their official and individual capacities. The court likewise dismissed with prejudice all claims against Davis and Son's Fender Fixer, LLC, Joey Doe, Alex Doe, and John Does #1-3 as prescribed. In its opinion, the district court did not address Brown's arguments regarding COVID or Brown's 2020 filings.

Brown timely appealed. Although he raises multiple issues on appeal, the dispositive question before this Court is whether the district court erred in granting Defendants' motions to dismiss after finding that Brown's claims were barred by Louisiana's one-year liberative prescriptive period.

---

set forth in the motions to dismiss" and dismiss all claims against the unidentified defendants for incomplete service of process.

No. 23-30146

## II.

Grants of a motion to dismiss are reviewed de novo.[11] "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling."[12] A district court's decisions regarding waiver of affirmative defenses, motions to strike, and denials of default judgment are reviewed for an abuse of discretion.[13]

## III.

Brown argues the district court erroneously granted Defendants' motions to dismiss for two reasons. First, Brown contends that the district court improperly considered the City's prescription defense because it was not timely raised. Second, Brown asserts that the limitations period has not yet tolled because of the continuing violation doctrine or, alternatively, that the prescriptive period was interrupted.

---

[11] *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Because the City filed its motion to dismiss after its answer, the magistrate judge properly considered the motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). FED. R. CIV. P. 12(c). Motions to dismiss and motions for judgment on the pleadings are governed by the same standard and both are reviewed de novo. *See Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020) ("We review [R]ule 12(c) dismissals de novo . . . . The standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6).") (internal citations and quotations omitted).

[12] *Taylor v. Bailey Tool Mfg. Co.,* 744 F.3d 944, 946 (5th Cir. 2014) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003)).

[13] *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169 (5th Cir. 2007) (reviewing motion to strike and decisions regarding entry of default judgment for abuse of discretion); *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 308 (5th Cir. 2019) (citing *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 (5th Cir. 2017)); *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398–99 (5th Cir. 2014); *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

No. 23-30146

## A.

The City of Central filed its answer on June 8, 2022, but did not assert the prescriptive bar. It did address the issue, however, after Corcoran and Porche raised prescription in their motions to dismiss. Brown moved to strike the City of Central's motion, objecting that the prescriptive defense was not raised in the City's answer. The district court denied Brown's motion after finding the City raised the defense at a "pragmatically sufficient time." Brown now contends the denial of his motion to strike was in error.[14] We disagree.

Federal Rule of Civil Procedure 8(c) requires defendants to assert any affirmative defenses, including that the statute of limitations has expired, in their responsive pleading, i.e., their answer.[15] A "[f]ailure to timely plead an affirmative defense *may* result in waiver and the exclusion of the defense from the case," but "[a] defendant does not waive a defense if it was raised at a pragmatically sufficient time and did not prejudice the plaintiff in its ability to respond."[16] This "play in the joints" is acceptable because "Rule 8(c)'s

---

[14] Below, Brown also moved to strike officers Corcoran, Porche, Sibley, and McKneely's individual-capacity motions to dismiss as untimely; his motion was denied. To the extent that he appeals the district court's denial of his request, this argument is forfeited for inadequate briefing. "Parties forfeit contentions by inadequately briefing them on appeal." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023) (citation omitted). "To be adequate, a brief must address the district court's analysis and explain how it erred." *Sec. & Exch. Comm'n v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (internal quotation and citation omitted). This rule applies to all parties, including pro se plaintiffs. *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts.") (internal citation and quotation omitted). Brown's appellate brief fails to explain how the district court erred on this point.

[15] Fᴇᴅ. R. Cɪᴠ. P. (8)(c)(1).

[16] *LSREF2*, 751 F.3d at 398 (internal citation and quotations omitted); *see also Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577–79 (5th Cir. 2009). "The terms waiver and

No. 23-30146

purpose is to give the plaintiff fair notice."[17] So, "the prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff (as every affirmative defense is)."[18]

The district court determined the City raised the defense in "sufficient time" and that Brown would not be prejudiced by the delay. We find that the district court did not abuse its discretion by denying Brown's motion to strike and considering the City of Central's prescription defense. Rule 8(c) is designed to give parties notice, and Brown received both fair notice of the City's defense and an adequate opportunity to respond. First, by the time the City filed its motion to dismiss, two other defendants— Corcoran and Porche—had already raised the defense in their own motions to dismiss. Therefore, as the district court determined, Brown "cannot claim unfair surprise by the City of Central's assertion of the same defense." Second, in the four months between when the City submitted its motion and the magistrate judge issued his report and recommendations, Brown filed at least three motions addressing the limitations defense. In his "Motion to Strike Defendants' Motions to Dismiss," Brown addressed the merits of the claim and argued the prescriptive period did not begin until he had "the

---

forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. '[F]orfeiture is the failure to make the timely assertion of a right [;] waiver is the 'intentional relinquishment or abandonment of a known right.'" *Hamer v. Neighborhood Housing Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). It may be more accurate to describe the untimely assertion of defenses as having been "forfeited" rather than "waived," but this opinion need not delve into the semantics in this instance because the conclusion is the same: the City raised its defense in sufficient time.

[17] *Thermotek*, 875 F.3d at 771 (citation and quotation omitted).

[18] *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008).

knowledge to be able to file suit and obtain relief." Clearly, he had ample time to consider and respond to the defense. Without evidence that Brown was prejudiced by the City's tardiness, the district court did not abuse its discretion by considering the prescription defense.[19]

## B.

Brown next contends the district court erred because his claims are not time-barred. First, Brown argues his causes of action have not yet accrued under the continuing violation doctrine because he continues to incur damages from the impoundment of his motorcycle. Second, Brown contends the prescriptive period was tolled pursuant to Louisiana's equitable *contra non valentem* doctrine. Neither argument is persuasive.

## 1.

Louisiana law establishes a one-year prescriptive period for "delictual" actions.[20] Delictual actions are torts, and because all of Brown's state and federal claims sound in tort, each claim is subject to the one-year liberative prescriptive period.[21] State law further provides that a cause of

---

[19] *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856 (5th Cir. 1983); *see also Bradberry v. Jefferson County*, 732 F.3d 540, 553 (5th Cir. 2013) (upholding district court decision to consider affirmative defense raised in amended answer because plaintiff had opportunity to respond and was not unfairly surprised).

[20] La. Civ. Code Ann. art. 3492 ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.").

[21] *See Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 98-0343 (La. 12/1/98), 721 So. 2d 853, 857 (explaining delictual actions are "available to an owner dispossessed as a result of an offense or quasi-offense or, in other words, a 'tort'"); *Hardin v. Straub*, 490 U.S. 536, 538 (1989) ("Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law."); *Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) (citation omitted) ("In § 1983 claims, the applicable

action accrues, or "commences to run[,] from the day injury or damage is sustained."[22] According to his complaint, Brown's injuries stem from his August 6, 2020 encounter with Defendants. However, the present suit was not filed until April 21, 2022, over one and a half years later. By the face of his complaint, Brown's suit is prescribed.

However, Brown disputes that his claims accrued on August 6, 2020. Because his motorcycle has not been returned, Brown maintains that this "continued deprivation of [his] property"[23] constitutes a continued violation of his rights. Under the federal continuing violation doctrine, Brown asserts that his "motorcycle necessarily needs to be returned before tolling can begin in this matter [sic]."

The continuing violation theory is a federal common law doctrine that governs when federal claims accrue.[24] Federal claims typically accrue "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[25] The continuing violation theory, however, "can relieve a plaintiff of showing that all of the defendant's conduct occurred within the prescriptive period, but only if the

---

statute of limitations is that which the state would apply in an analogous action in its courts.").

[22] La. Civ. Code Ann. art. 3492

[23] "Tolling, which interrupts the statute of limitations after it has begun to run, is . . . a matter of state law," although "accrual of a section 1983 claim, which determines when the statute of limitations begins to run, is governed by federal common law." *Heath*, 850 F.3d at 739. This Court understands Brown to argue that his claim has not yet *accrued* under the continued violation doctrine.

[24] *Heath*, 850 F.3d at 740; *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.").

[25] *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995) (citation omitted).

plaintiff can show 'a series of related acts, one or more of which falls within the limitations period.'"[26] Louisiana law includes a similar "continuing tort" doctrine, which provides that "where the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage."[27]

It is unlikely that the continuing violation doctrine applies here. The federal continuing violation theory is typically invoked in either hostile work environment or employment discrimination cases, and this Court has previously questioned whether the doctrine applies outside the discrimination context.[28] Brown has offered no case law suggesting application in an analogous case, and we too find none.

Assuming *arguendo* that either doctrine applies, Brown's argument still fails because the conduct complained of did not constitute a violation of his rights, much less a *continuing* violation of his rights. Both doctrines require plaintiffs to allege underlying wrongful conduct. Here, Brown claims that he was pulled over pursuant to an illegal "Municipal Scheme" and that the resulting impounding of his vehicle was unlawful. He is incorrect. Brown admits to driving a motorcycle without license plates. Doing so violates Louisiana law requiring all vehicles to be properly equipped with a

---

[26] *Montgomery v. La. ex rel. La. Dep't of Pub. Safety & Corr.*, No. 01-31458, 2002 WL 1973820, 46 F. App'x 732, *2 (5th Cir. 2002) (citing *Messer v. Meno*, 130 F.3d 130, 134–35 (5th Cir. 1997)).

[27] *Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99), 737 So. 2d 720, 726 (citing *South Central Bell Telephone Co. v. Texaco, Inc.*, 418 So.2d 531, 533 (La. 1982)).

[28] *See McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 n.27 (5th Cir. 1993) ("In fact, courts, including this one, are wary to use the continuing violation doctrine to save claims outside the area of Title VII discrimination cases.").

No. 23-30146

"permanent registration license plate."[29] The law further authorizes police officers to "immediately impound" vehicles in operation without license plates.[30] So, because Brown was operating a motorcycle without a permanent license plate, Defendants were legally authorized to pull him over and impound the vehicle. Because there was no unlawful act in the first instance, there has been no ongoing tort or violation of Brown's rights.[31]

Accordingly, the district court did not err in holding that Brown's federal and state law claims accrued on August 6, 2020.

**2.**

Additionally, Brown argues that the prescriptive period was interrupted both as an equitable and statutory matter. First, Brown seeks equitable tolling under Louisiana's *contra non valentem* doctrine due to the

---

[29] La. Stat. Ann. § 32:53(a)(2) (stating all motor vehicles, including motorcycles, must be equipped with a "permanent registration license plate"). Contrary to Brown's assertions, this law applies to all, not merely City of Central residents. *See* La. Stat. Ann. § 32:53(A)(1) ("No person shall drive or move, nor cause or knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway of this state, at any time, any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment, in proper condition and adjustment, as required in this Chapter, or which is constructed or equipped in any manner in violation of this Chapter, and no person shall do any act forbidden or fail to perform any act required under this Chapter.").

[30] La. Stat. Ann. § 32:57(A)(2) ("For any violation of [La. Stat. Ann. §] 32:53(A)(2), the vehicle may be immediately impounded.").

[31] *McGregor*, 3 F.3d at 867 ("We must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation.") (emphasis added); *Crump*, 737 So. 2d at 728 ("A continuing tort is occasioned by *unlawful acts*, not the continuation of the ill effects of an *original, wrongful act*.") (emphasis added); *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003 ("The inquiry is essentially a conduct-based one, asking whether the *tortfeasor* perpetuates the injury through overt, persistent, and ongoing acts.") (emphasis added).

No. 23-30146

COVID-19 pandemic. Because of the pandemic, he argues the "Middle District was closed and inaccessible to Plaintiff free of discrimination until March 29, 2023."[32] Second, Brown argues that his 2020 filings in a separate suit interrupted the limitations period while the case was pending. Third, Brown argues that prescription tolled until he discovered the City's allegedly fraudulent "Municipality Scheme," i.e., the practice of issuing traffic tickets.

Brown's first argument—that the COVID-19 pandemic suspended Louisiana's prescriptive period—was not raised before the magistrate judge. Our precedent establishes that issues raised for the first time in an objection to a report and recommendation were not properly before the district court and should not be considered on appeal.[33] Thus, this argument is forfeited.[34]

---

[32] Brown's statements regarding "discrimination" seem to refer to his earlier claims that Chief Judge Shelly D. Dick, to whom his case was originally assigned, and the Middle District of Louisiana generally subjected him to "34 months + of [] continued discrimination" by "forc[ing] medical decisions upon the general public" and requiring "the Plaintiffs [sic] and others similarly situated, to either take experimental drugs or wear a mask to enter the Federal Courthouse." Brown later sought to disqualify and recuse all judges in the Middle District from hearing his case. The district court judge denied the motion because Brown failed to meet the recusal standards outlined in 28 U.S.C. § 144 and 28 U.S.C. § 455. Despite devoting six pages of his opening brief to this issue, Brown offers no *argument* indicating he appeals the denial of his motion to recuse. Thus, to the extent he appeals this decision, this issue is forfeited. *Guillot*, 59 F.4th at 751.

[33] *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001); *Banks v. Dretke*, 383 F.3d 272, 278 (5th Cir. 2004); *see also Rodriguez v. Apfel*, No. 95-50703, 1998 WL 127813, *3 (5th Cir. 1998) (unpublished); *Buchanan v. CCA/Tallahatchie Cnty. Corr. Facility*, 704 F. App'x 307, 309 (5th Cir. 2017) (applying rule to pro se plaintiff); *Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir. 2016) (same).

[34] This argument also fails on the merits. The COVID-19 pandemic, as applied to Brown's case, does not fall within the statutory suspension established by LA. STAT. ANN. § 9:5829. The statute suspended prescription from March 17, 2020, through July 5, 2020; thus, the suspension ended before Brown's interaction with the police officers on August 6, 2020, and cannot provide relief. *See* LA. STAT. ANN. §§ 9:5829, 9:5830. Brown also failed to establish that the pandemic is encompassed by the *contra non valentem*

No. 23-30146

The second argument fares no better. In November 13, 2020, Brown filed suit in the Middle District of Louisiana alleging substantively identical issues as in the present case. He now argues that the 2020 filing interrupted the prescriptive period. Although Louisiana Civil Code article 3462 states that prescription is "interrupted" by the filing of suit in a court of competent jurisdiction and venue, Brown first raised this argument in his objections to the magistrate judge's report and recommendation. Like his COVID-19 argument, this contention is forfeited.[35]

Finally, Brown argues that prescription paused pursuant to the equitable doctrine of *contra non valentem* until he "discovered" Defendants' allegedly fraudulent practice of issuing traffic tickets. Throughout his pleadings, motions, and briefing on appeal, Brown contends that Defendants

---

doctrine. To the extent that he argues the COVID-19 pandemic constituted a "cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action," under the doctrine, he has provided no explanation as to how the pandemic limited his access to the courtroom. Even if *contra non valentem* covered the pandemic, a "plaintiff must establish not only the occurrence of a catastrophe but also a factual impediment to filing suit." *Anding o/b/o Anding v. Ferguson*, 54,575 (La. App. 2 Cir. 7/6/22), 342 So. 3d 1138, 1150 (citations omitted). Although Brown claims the "Middle District was closed and inaccessible to Plaintiff free of discrimination until March 29, 2023," he offers no further explanation on this point and, thus, has failed to establish how he was actually impaired in accessing the courtroom.

[35] La. Civ. Code Ann. art. 3462; *Armstrong*, 951 F.2d at 630. This argument also fails on the merits. Prescription is interrupted when plaintiffs file suit but if a plaintiff "abandons the suit, voluntarily dismisses the suit at any time either before the defendant has made any appearance of record or thereafter, or fails to prosecute the suit at the trial," then "[i]nterruption is considered never to have occurred." La. Civ. Code Ann. art. 3463. Brown's 2020 suit was dismissed pursuant to Federal Rule of Civil Procedure 41(b), and the Fifth Circuit has held that dismissals under Rule 41(b) constitute "abandon[ment] of the suit" under the Louisiana code. *Hilbun v. Goldberg*, 823 F.2d 881, 884 (5th Cir. 1987) (finding dismissal under Rule 41(b) was analogous to abandonment under Louisiana procedure). Therefore, "[i]nterruption is considered never to have occurred." La. Civ. Code Ann. art. 3463.

can only issue tickets to drivers who are "inhabitant[s] of the municipal corporation known as and operating as the [City of Central]." Accordingly, he claims the City's policy of ticketing any driver "forc[es] inhabitation upon those in its territory, [and] unlawfully converts Peacekeepers into Revenue Agents." Brown categorizes this practice as "blatant and continuing FRAUD" and, citing to the Supreme Court case of *Merck & Co., Inc. v. Reynolds*,[36] he asserts the "bar of the statute of limitations does not begin to run until the fraud is discovered." Consequently, Brown claims the limitations period did not run until he discovered the City's fraudulent scheme "in January of 2022 with his reading of the municipalities section of American Jurisprudence."

While timely raised, this argument is meritless as Brown misunderstands both the *contra non valentem* doctrine and the relevancy of *Merck*. *Contra non valentem* is "a judicially created exception to prescription" "based on the civil doctrine of *contra non valentem agere nulla currit praescriptio*, which means prescription does not run against a party who is unable to act."[37] The doctrine recognizes four instances in which prescription is suspended, the fourth of which is "[w]here the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant."[38] This "is equivalent to the discovery doctrine,"[39] which provides that a "cause of action does not

---

[36] *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010).

[37] *In re Med. Rev. Panel for Claim of Moses*, 2000-2643 (La. 5/25/01), 788 So. 2d 1173, 1178 n.10 (citation omitted) (hereinafter "*Claim of Moses*"); *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So. 2d 960, 963.

[38] *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319 (La. 1979) (surveying case law and establishing the four categories).

[39] *Claim of Moses*, 788 So. 2d at 1178 n.10 ("As noted, the fourth category is equivalent to the discovery doctrine. Under the discovery doctrine, "prescription does not

No. 23-30146

mature (so prescription does not begin to run) until it is known or at least knowable."[40] However, Brown conceded he "knew he had been injured" on August 6, 2020. Thus, the one-year period began to run the day he was injured, and the discovery rule is inapplicable.[41]

*Merck* does not change this conclusion because it did not expand Louisiana's *contra non valentem* doctrine and is inapplicable to this case. *Merck* was a securities fraud case and addressed the statute of limitations under 28 U.S.C. § 1658.[42] Because this case does not concern securities fraud and Brown's claims are subject to a state, not federal, statute of limitations, *Merck* is inapposite.

**3.**

In conclusion, Brown's causes of action accrued on August 6, 2020. He has failed to identify a basis by which the one-year prescriptive period tolled, specifically because the continuing violation or continued tort theories do not apply, he forfeited his arguments regarding COVID-19 and his 2020 lawsuit, and any allegations regarding Defendants' allegedly fraudulent ticketing practice do not fall under the rubric of the *contra non valentem*

---

begin to accrue until the plaintiff should have discovered that he had a reasonable basis for pursuing a claim against a specific defendant.") (citation omitted).

[40] *Corsey*, 375 So. 2d at 1322 ("This fourth or more modern situation, which has been judicially characterized as a Contra non valentem exception [sic] to the running of prescription, is generically similar to instances provided by statute where prescription does not begin to run until the claimant has knowledge of his cause of action. In these, the cause of action does not mature (so prescription does not begin to run) until it is known or at least knowable.").

[41] La. Civ. Code Ann. art. 3492.

[42] *Merck*, 559 U.S. at 648.

No. 23-30146

doctrine. Because Brown filed suit more than one year after he knew of his injury, we conclude that his claims are prescribed.

## IV.

Finally, Brown maintains that the district court erred by denying his motion for default judgment as to Davis and Sons and by sua sponte dismissing these claims.[43] We find no error.

Plaintiffs are "not entitled to a default judgment as a matter of right, even where the defendant is technically in default."[44] Importantly here, default judgment is only appropriate where the pleadings provide a sufficient basis for relief.[45] As discussed, Brown's pleadings do not state a claim for relief against any party in this case, including Davis and Sons, because his claims are time-barred. It is no matter that the prescription defense was not raised by Davis and Sons because "where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant.'"[46] Furthermore, the district court could dismiss these claims sua sponte "as long as the procedure employed is

---

[43] The district court dismissed with prejudice Brown's claims against Davis and Son's Fender Fixer, LLC, Joey Doe, Alex Doe, and John Does #1-3 after finding "those claims have prescribed [sic]." Alternatively, the claims were dismissed these claims without prejudice for failure to serve. However, although there is no indication that "Joey Doe, Alex Doe, and John Does #1-3" were served, the record indicates that Davis and Son's Fender Fixer was served on May 18, 2022. Nevertheless, because Brown's claims are prescribed, any error is harmless.

[44] *Lewis*, 236 F.3d at 767.

[45] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted).

[46] *Lewis*, 236 F.3d at 768; *id.* ("Several courts have held that where a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant. We agree with these other courts and accordingly adopt their holding.") (internal citations and quotations omitted).

No. 23-30146

fair."[47] We find that the objections period following the magistrate judge's report and recommendations constitutes fair procedure because it gave Brown adequate time to lodge a complaint on this issue.[48]

Accordingly, we AFFIRM the district court's judgment.

---

[47] *Lozano*, 489 F.3d at 642; *id.* ("We have held that a district court is authorized to consider the sufficiency of the complaint on its own initiative. And if the court finds the complaint fails to state a claim, it may dismiss as long as the procedure employed is fair.") (internal citations and quotations omitted).

[48] To the extent Brown argues the district court improperly denied his motions for default judgment against the officers in their individual capacities, his claim fails for the same reason.